## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 30 2017, 11:05 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT (MOTHER)

Jennifer A. Joas
Madison, Indiana

ATTORNEY FOR APPELLANT (FATHER)

Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of A.T., Jr., A Minor Child,

K.T., Mother, and A.T., Sr., Father,

*Appellants-Respondents,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

May 30, 2017

Court of Appeals Case No.
15A01-1612-JT-2944

Appeal from the Dearborn Circuit Court

The Honorable James D. Humphrey, Judge

The Honorable Kimberly A. Schmaltz, Magistrate

Trial Court Cause No.
15C01-1605-JT-13

**Najam, Judge.**

## Statement of the Case

A.T., Sr. ("Father") and K.T. ("Mother") (collectively "Parents") appeal the trial court's termination of their parental rights over their minor child A.T., Jr. ("Child"). Parents raise a single issue for our review, namely, whether the State presented sufficient evidence to support the termination of their parental rights. We affirm.

## Facts and Procedural History

In February 2015, when Child was almost two years old, the Department of Child Services ("DCS") investigated a report that Father was physically abusing Mother and that Parents were abusing drugs. Parents entered into an informal adjustment agreement with DCS whereby they agreed to participate in services for six months. But on March 5, Father was convicted of domestic battery against Mother, and he was sentenced to one year with 275 days suspended to probation. Father was ordered to have no contact with Mother. In July 2015, DCS family case manager Amy Wesley contacted Parents and discovered that they were living together in violation of the no-contact order. Wesley reported the violation to local police, who arrested Father. Wesley then assisted Mother with finding housing.

On August 17, DCS filed a petition alleging that Child was a child in need of services ("CHINS"), and on September 10, due to Mother's continued drug use, DCS removed Child from Mother's care. At a hearing, Parents admitted to the

allegations in the CHINS petition. And on October 9, the trial court adjudicated Child to be a CHINS. The trial court ordered Parents to comply with a parental participation order, which required Parents to complete parenting assessments, psychological evaluations, and substance abuse assessments. Parents were also required to submit to random drug screens, maintain suitable housing and a legal source of income, and participate in visitation with Child.

[4] Parents did not successfully complete their court-ordered services, and on May 13, 2016, DCS filed petitions to terminate their parental rights. Following a hearing, the trial court terminated Parents' parental rights and found and concluded in relevant part as follows:

> There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for the placement outside the parent's home will not be remedied and a reasonable probability that continuation of the parent-child relationship poses a threat to the well-being of the child in that:

> The Department of Child Services (DCS) became involved with [K.T.] (Mother) and [A.T., Sr.] (Father) in February of 2015 due to allegations of domestic violence and the use of illegal controlled substances. Father was charged and convicted of domestic battery. (DCS Exhibits 1-6). There was a no-contact order between Father and Mother. Mother and Father were offered an Informal Adjustment in Franklin County, Indiana; however, [they] moved to Dearborn County, Indiana during that time. Dearborn County Family Case Manager, Aimee Wesley (FCM Wesley) received a report regarding Mother and Father living together with the child, in violation of the no-contact order, in July of 2015. FCM Wesley found Mother and Father

living together in Aurora, Indiana and Father was subsequently arrested. A child in need of services petition was filed on August 17, 2015, and the child was not removed. (DCS Exhibit 7).

Mother was compliant with DCS at the beginning of the case and participated in services. DCS helped her obtain secure housing by providing a secur[ity] deposit and the first month's rent for an apartment for Mother and the child. In September of 2015, Mother began to test positive for illegal controlled substances. (DCS Exhibits 8-10 and 12-15). She tested positive for amphetamine, methamphetamine, and cocaine on September 9, 2015; heroin and morphine on September 15, 2015; heroin and morphine on September 28, 2015; cocaine, heroin, and morphine on November 6, 2015; and heroin and morphine on November 19, 2015. On September 14, 2015, Judge Humphrey ordered the child to be removed from Mother due to her continued drug use. (DCS Exhibit 7).

Mother did not comply with services. Mother was referred to individual outpatient treatment through Community Mental Health. Mother was to complete group and individual sessions with Holly Steiner and barely attended. Mother did not address her substance abuse issues. Mother did not comply with supervised visitation through Ireland Home Based Services (Ireland). The supervised visitation worker, Ashley Carpenter, noticed the Mother appeared to be under the influence during one of the visits. Mother cancelled or did not attend multiple visits. Mother was evicted from the apartment DCS helped pay for and DCS did not receive the security deposit back due to damage to the apartment. Mother was also fired from her employment for having a syringe at work.

After the Court entered a dispositional order and parental participation order were entered [sic] Mother was charged and convicted of three felonies. On February 23, 2016, Mother was charged with fraud and two counts of theft in 15D02-1602-F6-067 and entered a plea of guilty to the fraud charge on August 8,

2016. (DCS Exhibit 16 and 20). Mother was then charged with possession of drugs, aggravated possession of drugs, and illegal use or possession of drug paraphernalia in Hamilton County, Ohio on February 26, 2016. Mother was convicted of possession of drugs (heroin) on April 22, 2016. (DCS Exhibits 17 and 18). On March 24, 2016, Mother was then charged with dealing in a narcotic drug (hydrocodone) in 15D02-1603-F3-007 and plea[ded] guilty to that charge on August 3, 2016. (DCS Exhibits 19 and 20). Mother admitted to FCM Wesley that she had sold drugs to an undercover police officer.

Father was incarcerated at the beginning of the case. When he was released he engaged in supervised visitation; however, in the beginning of 2016 Father stopped participating in visits. Father did not keep in contact with FCM Wesley and did not participate in father engagement services through Ireland. Father did not submit to any drug screens as ordered.

Father was charged with invasion of privacy on July 20, 2015, in 15D02-1507-CM-463. Father was convicted for the invasion of privacy on October 13, 2015. (DCS Exhibits 21 and 22). On January 28, 2016, Father was charged with a probation violation due to failing a drug screen for norbuprenorphine. (DCS Exhibit 23). That request for probation violation was amended on March 22, 2016, due to Father not attending probation appointments. (DCS Exhibit 24). Again, the probation violation was amended on March 29, 2016 because of a subsequent criminal offense. (DCS Exhibit 26). On March 28, 2016, Father was charged with resisting law enforcement (fleeing). (DCS Exhibit 28). Father was subsequently convicted on the probation violations and resisting law enforcement. (DCS Exhibit 25 and 27). Father did not stay in contact with DCS after his release from incarceration. FCM Wesley only discovered Father's whereabouts in May of 2016 when she was driving in Aurora, Indiana and noticed Father walking down the street.

On October 5, 2016, Father was arrested again and charged with resisting law enforcement (fleeing) while using a vehicle, resisting law enforcement (fleeing), and reckless driving. (DCS Exhibit 29). Father admitted to FCM Dion Edward that a few days prior to the incident he had been "shooting up." Father stated that he was pulled over by the police after he stopped at a church. Father stated he fled the police in an attempt to go to his home and get his cell phone. Additionally, Father admitted during the termination hearing that he has a criminal conviction from Kentucky for arson and burglary and was incarcerated in the State of Kentucky.

The guardian ad litem, Melissa Scholl, believes that termination of parental rights is in the best interest of the child.

Termination is in the child's best interests of the child [sic] in that: Both Father and Mother did not comply with services offered through DCS. Mother tested positive on multiple occasions for controlled substances. Mother was charged with three felonies while the case was pending and is currently serving a sentenc[e] for dealing in a controlled substance. Father did not comply with services and continued to commit criminal offenses while the case was pending. Father admitted to using controlled substances and fleeing from police in a vehicle on October 4, 2016. Mother and Father have not complied with the Court's orders, have not been rehabilitated, and the child cannot safely be reunified with either of them.

The Department of Child Services has a satisfactory plan for the care and treatment of the child, which is: Adoption with relative placement, [L.J. and D.J.]

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

That the parent-child relationship between [A.T.], the child, and mother, [K.T.], be terminated and all rights, powers, privileges,

immunities, duties, and obligations, including the right to consent to adoption, pertaining to that relationship are permanently terminated.

That the parent-child relationships between [A.T.], the child, and father, [A.T., Sr.], be terminated and all rights, powers, privileges, immunities, duties, and obligations, including the right to consent to adoption, pertaining to that relationship are permanently terminated.

That the child shall remain under the supervision of the Department of Child Services, and subject to the jurisdiction of the Court in case number 15C01-1508-JC-000074. The guardianship with [C.R. and P.R.] in 15C01-1607-GU-043 is denied. The Court finds that Judge Humphrey approved DCS' permanency plan of adoption in the 15C0l-1508-JC-074 on July 25, 2016. The child has been in relative care with maternal aunt and uncle, [L.J. and D.J.], for approximately one year. [L.J. and D.J.] are the intended adoptive family and that adoption by [L.J. and D.J.] would be in the child's best interest. The Court finds that the guardianship is not in the child's best interest.

Father's Appellant's App. Vol. II at 17-20. This appeal ensued.

# Discussion and Decision

We begin our review of this appeal by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cnty. Ofc. of Family & Children (In re K.S.)*, 750

N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> * * *
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2017). DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind.*

*Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[7] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cnty. Ofc. of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cnty. Ofc. of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[8] Here, in terminating Parents' parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Ofc. of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

Parents' challenges on appeal are very narrow. Mother only challenges the sufficiency of the evidence to show that termination is in Child's best interest. Father also challenges the trial court's conclusion that termination is in Child's best interest. And, while Father appears to challenge the court's conclusions that there is a reasonable probability that the conditions that resulted in Child's removal will not be remedied and that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of Child, Father does not present any cogent argument on those conclusions distinct from that regarding Child's best interest. Accordingly, Father has waived review of those issues. Waiver notwithstanding, we address the sufficiency of the evidence supporting the trial court's conclusions that there is a reasonable probability that the conditions that resulted in Child's removal will not be remedied[1] and that termination of Parents' parental rights is in Child's best interest.

### Conditions that Resulted in Child's Removal will not be Remedied

In determining whether the evidence supports the trial court's finding that Father[2] was unlikely to remedy the reasons for Child's removal, we engage in a two-step analysis. *E.M. v. Ind. Dep't of Child Servs. (In re E.M.)*, 4 N.E.3d 636, 643 (Ind. 2014). "First, we identify the conditions that led to removal; and

---

[1] Because the statute is written in the disjunctive, we need not address the court's conclusion that continuation of the parent-child relationship poses a threat to Child's well-being. I.C. § 31-35-2-4(b)(2).

[2] Again, Mother does not challenge the trial court's conclusion on this issue.

second, we determine whether there is a reasonable probability that those conditions will not be remedied." *Id.* (quotations and citations omitted). In the second step, the trial court must judge a parent's fitness to care for his children at the time of the termination hearing, taking into consideration evidence of changed conditions. *Id.* However, the court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Moore v. Jasper Cty. Dep't of Child Servs.*, 894 N.E.2d 218, 226 (Ind. Ct. App. 2008) (quotations and citations omitted). Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *Id.* Moreover, DCS is not required to rule out all possibilities of change; rather, it need establish only that there is a reasonable probability the parent's behavior will not change. *Id.*

[11] Father does not challenge the trial court's findings on this issue, and we cannot say that the trial court clearly erred when it concluded that the conditions that resulted in the Child's removal from Father's care will not be remedied. Child was removed from Father's care due to Father's domestic violence and drug use. Yet, despite the coercive intervention of the trial court in the CHINS proceedings, Father has not remedied his drug use. Father refused to appear for numerous drug screens between the dispositional hearing in the CHINS matter and the ensuing termination hearing. And Father only attended individual counseling from November 2015 to January 2016. After that time, Father's counselor was unable to locate him. Father tested positive for

norbuprenorphine on January 21, 2016, and he was briefly incarcerated in February 2016. At the termination hearing, Wesley testified that Father's "success hinges upon his sobriety and he's not been able to maintain that." Tr. at 102.

[12] Father's arguments on appeal simply seek to have this court disregard the evidence most favorable to the trial court's judgment and instead reweigh the evidence in his favor. We will not do so. We cannot say that the trial court clearly erred when it concluded that the conditions that resulted in Child's removal will not be remedied.

### Best Interests

[13] In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *A.S. v. Ind. Dep't. of Child Servs. (In re A.K.)*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." *Castro v. State Ofc. of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and *the testimony of the service providers may support a finding that termination is in the child's best interests.*" *In re A.K.*, 924 N.E.2d at 224 (emphasis added).

Parents do not challenge the trial court's findings in support of this conclusion. But Mother contends that the court clearly erred given that "there was a guardianship petition pending and a satisfactory plan for permanency would have been guardianship." Mother's Appellant's Br. at 16. And Father's contentions on this issue amount to nothing more than a request that we reweigh the evidence, which we will not do.

Wesley, the family case manager, testified that termination of Parents' parental rights is in Child's best interest. The Guardian Ad Litem Melissa Scholl also testified that termination of parental rights is in Child's best interest. To the extent Mother would prefer that the court appoint a guardian over Child instead of terminating her parental rights, Child needs permanency. At the time of the termination hearing, Mother had recently begun to serve a six-year term of incarceration. The totality of the evidence, including Parents' historical inability to provide a safe and stable home and their refusal to take advantage of the resources DCS provided them, supports the trial court's conclusion that termination of Parents' parental rights is in Child's best interest.

Affirmed.

Riley, J., and Bradford, J., concur.